IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERNEST BROOKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1250-SLR |
| | ) | |
| RAPHAEL WILLIAMS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
<u>OF HIS MOTION TO DISMISS/SUMMARY JUDGMENT</u>**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

<u>/s/ Lisa Barchi                                </u>
Lisa Barchi  #3927
Deputy Attorney General
Carvel State Office Building
820 N.  French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
lisa.barchi@state.de.us

Attorney for Defendant Raphael Williams

DATE: June 29, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ERNEST BROOKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 04-1250-SLR |
| | ) |
| RAPHAEL WILLIAMS, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**STATE DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS/SUMMARY JUDGMENT PURSUANT TO RULES 12(b)(1) AND 12 (b)(6)  OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**I.   Standard of Review**

In deciding a motion to dismiss, the Court must accept as true all material allegations of the complaint, and it must construe the complaint in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v Mirage Resorts*, Inc., 140 F.3d 478, 483 (3rd Cir. 1998). "The complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegation of the complaint." *Id.*  In addition, though *pro se* pleadings are entitled to leniency, such pleadings must still place a defendant on notice as to what wrong he supposedly committed.  *Riley v. Jeffes*, 777 F.2d 143, 148 (3rd Cir. 1985).  ("[I]f a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed.").

At their most specific, Plaintiff's allegations in this case involve his claim that he was housed in a cell with two other inmates, and had to sleep on the floor near a toilet.  Plaintiff also

claims that he did not receive medication for his various illnesses, and had to deal with unpleasant emotions, such as hostility, anxiety, stress, disrespect, humiliation, among other feelings about his incarceration. The gravamen of Plaintiff's complaint is that he had an unpleasant experience while he was incarcerated.

Defendant refers to matters outside the pleadings, therefore the Court may treat its motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Camp v. Brennan*, 219 F.3d 279, 280 (3rd. Cir. 2000) (consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment). Defendant Raphael Williams contends that he is entitled to judgment as a matter of law because there are no genuine issues of material fact in dispute. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"). Defendant asserts that Plaintiff has not made, and cannot make a sufficient showing of the essential elements of his case for which he carries the burden of proof. Therefore, dismissal is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addition, Defendant states, unless there is sufficient evidence to enable a jury reasonably to find for the nonmoving party on the factual issue, summary judgment should not be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

II.     **Statement of Facts**

Late in the evening of July 7, 2004, Plaintiff was arrested and taken to HRYCI, where he was placed in a cell with two other inmates. Five days later he was moved to a cell where he had a bunk. (Exhibit A).

An intake screening was completed on July 8, 2004, at which time he was asked to provide his medical history and the names of any medications he was taking. It is noted in the medical records obtained from HRYCI that he has diabetes and takes several psychotropic medications. Records regarding the inmate's medical condition were obtained from HRYCI. (Exhibit B). He was unsure regarding his diabetic medications. On the evening of July 8, 2004, medication records show that Plaintiff started receiving two of the psychotropic medications that he named at the time of his intake screening. (Exhibit C). On July 9, 2004, Plaintiff told a nurse that he has diabetes and needs medication. At that time an accucheck fingerstick blood sugar was done, showing that Plaintiff's blood sugar was elevated. Physician's orders were received that day for diabetic medication and testing, along with orders for several blood tests. (Exhibit D).

Throughout Plaintiff's incarceration at HRYCI, he received regular accucheck blood sugar testing which showed that, with the exception of the first blood sugar result, his blood glucose was within normal limits. (Exhibit E). He also received a nutritional assessment. (Exhibit F). After a vision screening test he was issued reading glasses. In addition, Plaintiff received a psychiatric evaluation and his medications were adjusted. (Exhibit G). Plaintiff signed a consent form to receive the psychotropic medications, at the time of his evaluation on July 19, 2004. (Exhibit H).

There are three grievances recorded as received by HRYCI, dating July 14, 2004, July 17, 2004, and August 16, 2004. On July 13, 2004 an incident report was written regarding Plaintiff having food from the cafeteria in his cell. The disciplinary report of July 13, 2004 states that a corrections officer removed the food. (Exhibit I).

The July 14, 2004 grievance filed by Plaintiff and recorded by HRYCI revolves around Plaintiff's claim that he did not have enough time to eat his meal, and took the food back to his cell, where he was forced to eat in his cell. The July 16, 2004, grievance concerns Plaintiff's claim that he received an incorrect medication. The August 16, 2004 grievance Plaintiff complains of receiving dirty clothing when he entered the facility, and then he was forced to sleep on the floor of a cell containing two other inmates.

A review of the HRYCI housing records shows that Plaintiff was the third person in a cell and had to sleep on the floor from July 8, 2004 to July 12, 2004. On July 12, 2004 he was moved to a cell where he was assigned a bunk. Plaintiff spent five nights sleeping on the floor.

On September 1, 2004, a *Nollo Prosequi* was entered on all charges against Plaintiff, and he was released from HRYCI that day.

## ARGUMENT

**I.    STANDARD FOR DISMISSAL/SUMMARY JUDGMENT PURSUANT TO RULES 12 AND 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

    **A.    LACK OF SUBJECT MATTER JURISDICTION TO HEAR § 1983 CLAIMS AGAINST THE STATE OR ITS AGENCIES.**

In this case, Plaintiff attempts to sue a State of Delaware employee specifically named in his official capacity. Pursuant to the Eleventh Amendment, the Federal Court lacks subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute.... It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (citations omitted). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of

5

subject matter jurisdiction, all other defenses and objections become moot." *In Re Corestates Trust Fee Litigation,* 837 F.Supp. 104, 105 (E.D.Pa.1993), *aff'd* 39 F.3d 61 (3d Cir. 1994). *Cf. Bowers v. National Collegiate Athletic Association*, 346 F.3d 402, 418 (3d Cir. 2003).[1]  When reviewing a facial attack on subject matter jurisdiction, the Court is required to accept all allegations in the complaint as true. *See Mortenson v. First Federal Sav. and Loan Assoc.*, 540 F.2d 884, 891 (3d Cir. 1977). Lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), may be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion, if the parties do not raise it. *Dow Chem. Co. v. Exxon Corp.,* 30 F.Supp.2d 673, 689-690 (D. Del. 1988)(*citing Moodie v. Federal Reserve Bank of New York,* 58 F.3d 879, 882 (2d Cir.1995)). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *Id.* (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994)). *See also In Re Orthopedic "Bone Screw" Products Liability Litigation,* 132 F.3d 152, 155 (3d Cir. 1997)("If a case, over which the court lacks subject matter jurisdiction, was originally filed in federal court, it must be dismissed. If it was removed from state court, it must be remanded").

    B.    DISMISSAL OF § 1983 CLAIMS FOR FAILURE TO STATE A CLAIM.

Defendant Warden Raphael Williams, in his official capacity, cannot be considered a "person" as required by 42 *U.S.C.* § 1983.  In deciding a motion to dismiss, the Court must accept as true all material allegations of the complaint, and it must construe the complaint in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  "A complaint should be dismissed only if, after

---

[1] "[A] court may reserve judgment on Eleventh Amendment issues even when advanced by a state **where it can resolve the case on other grounds and the prevailing party on the merits would be the same as the prevailing party if immunity were recognized.**"  (Emphasis added).

accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* In addition to the fact that Defendant Warden Raphael Williams, in his official capacity, cannot be considered a "person" as required by 42 *U.S.C.* § 1983, Plaintiff's complaint is devoid of any factual allegation demonstrating Defendant Williams's personal involvement in any aspect of the alleged violations. Accordingly no relief can be granted under any set of facts provable under the complaint.

II.  **PLAINTIFF'S COMPLAINT AGAINST DEFENDANT RAPHAEL WILLIAMS SHOULD BE DISMISSED IN ITS ENTIRETY FOR LACK OF SUBJECT MATTER JURISDICTION.**

Plaintiff alleges claims against an agency of the State of Delaware in clear contradiction to longstanding Eleventh Amendment jurisprudence. At paragraph three of his complaint, Plaintiff alleges Warden Raphael Williams is the sole defendant. No fact in the complaint so much as suggests that Warden Williams knew of, or participated in any of the events set forth in Plaintiff's complaint. Taken as a whole, it is clear that Plaintiff is suing Warden Williams in his official capacity as warden of HRYCI.

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Flordia*, 517 U.S. 44 (1996). "Congress' powers under Article I of the Constitution do not include the power to subject States to suit at the hands of private individuals." *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 80 (2004). "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neely v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002)(*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida, v. Florida*, 517 U.S. 44 (1996).

No such clear intent can be seen in 42 *U.S.C*. § 1983 or is demonstrated in the text of Plaintiff's complaint. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 *U.S.C*. § 1983. Neither the State of Delaware nor its officials acting in their official capacity are "persons" as contemplated by 42 *U.S.C*. § 1983.

> [T]the Supreme Court has held that neither a State nor its officials acting in their official capacities are 'persons' under §§ 1983. *Ospina v. Dep't of Corrections, State of Del.*, 749 F. Supp. 572, 577 (D. Del. 1991) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Department of Correction, as a state agency, is not a person under §§ 1983. Consequently, '[a]bsent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant.' *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3rd Cir. 1981) (citing *Alabama v. Pugh,* 438 U.S. 781 (1978) (per curiam)). Furthermore, the State of Delaware has not waived its Sovereign immunity under the

>Eleventh Amendment. *See Ospina v. Dep't of Corrections*, 749 F.Supp at 579.

*Church v. Department of Correction*, No. 00-085-SLR, 2002 WL 31927434, at *4 (D. Del. Dec. 18, 2002). According to controlling authority in this jurisdiction, the Eleventh Amendment to the United States constitution specifically prohibits official-capacity suits in Federal Court.

### III. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY PERSONAL INVOLVEMENT OF DEFENDANT RAPHAEL WILLIAMS IN THE ISSUES RAISED IN PLAINTIFF'S COMPLAINT.

Plaintiff's complaint fails to indicate any personal involvement by the only named State Defendant, Warden Raphael Williams. In actions brought pursuant to 42 *U.S.C.* § 1983, an individual cannot be held liable in the absence of personal involvement or knowing acquiescence of the alleged deprivation. *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981) *cert. denied,* 458 U.S. 1121 (1982). "[T]he officials' misconduct cannot be merely a failure to act. Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Id.* Without identifying how he participated in, personally directed, or acquiesced in the events which he claims deprived him of constitutional rights, Defendant Williams cannot be held liable and dismissal is appropriate. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). To show "deliberate indifference," a plaintiff must demonstrate a sufficiently culpable state of mind on the part of the defendant. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Plaintiff's Complaint fails to allege any affirmative act or failure to act by Defendant Williams other than his role as "warden" of HRYCI. There is no allegation that Defendant

9

Williams had any personal knowledge of or involvement in any of the alleged incidents contained in the complaint. Accordingly, the Plaintiff's complaint against Defendant Williams should be dismissed because the Plaintiff fails to allege any personal involvement by Defendant Williams in any of the allegations stated in the Complaint.

**IV.    PLAINTIFF'S CLAIM MUST FAIL BECAUSE, PURSUANT TO 42 U.S.C. § 1997e(e), HE DID NOT SUFFER PHYSICAL INJURY WHICH IS REQUIRED IN ORDER TO PURSUE A CIVIL CLAIM IN FEDERAL COURT.**

Plaintiff does not allege any physical injury in his claim. Plaintiff alleges that he suffered stress, anxiety, disrespect and a loss of sleep while incarcerated at HRYCI. The Prison Litigation Reform Act ("PLRA") mandates that an *in forma pauperis* plaintiff demonstrate physical injury as a pre-requisite to recovery for any mental or emotional injury. 42 U.S.C. § 1997e(e), entitled "Limitation on recovery" states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Third Circuit has interpreted § 1997e(e) to require more than de minimus injury.

> We believe that reading 1997e(e) to allow a plaintiff to allege any physical injury, no matter how minor, would produce an unintended (indeed absurd) result. Were we not to read 1997(e) as requiring more than a de minimis physical injury, we would turn its physical injury prerequisite into a mere pleading requirement, thereby rendering the requirement meaningless as a practical matter.

*Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003)(following the approach of the Fifth, Ninth, and Eleventh Circuits that pursuant to § 1997e(e) a plaintiff must allege injury which is "less-than-significant-but-more-than-de minimis. . ." Id.).

Plaintiff's complaint fails to allege any physical injury of any kind. Accordingly,

Plaintiff's cause of action must be dismissed for failure to comply with 42 U.S.C. § 1997e(e). As a basis for his Eighth Amendment claim, Plaintiff alleges that he had to sleep on the floor and did not receive his medications, all of which he appears to claim caused him emotional and mental distress. Plaintiff alleges no physical injury in his claim. Therefore, he has no standing under 42 *U.S.C.*§1997e(e) to bring a civil action in Federal court.

While Plaintiff attempts to state a claim of cruel and unusual punishment, an examination of those claims reveals far less than what is required to sustain an allegation of cruel and unusual punishment under the Eighth Amendment.

> A. PLAINTIFF FAILS TO STATE A CLAIM WHICH MEETS THE REQUIRED STANDARD FOR EIGHTH AMENDMENT CLAIM FOR INADEQUATE MEDICAL CARE.

Plaintiff's attempt to allege an Eighth Amendment violation because he did not receive medication for his various illnesses must fail because he cannot demonstrate that Defendant Williams was deliberately indifferent to his needs. To succeed with his claim, Plaintiff must show that Defendant Williams knew of Plaintiff's illnesses and disregarded the serious risk to Plaintiff's health.

> [T]he official must be both aware of the facts from which the inferences can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff has not shown through any statement of facts in his claim that Defendant Williams knew of any health problems suffered by Plaintiff. Thus, Plaintiff can draw no inference that Defendant disregarded a serious risk of harm to Plaintiff. Specifically, Plaintiff must show that he has a serious medical condition, and that Defendant was deliberately indifferent to his need for medical care. *McCray v. Williams*, 357 F.Supp. 2d 774, 780 (D. Del. 2005). Plaintiff did list several serious medical conditions in his

complaint, including diabetes, high blood pressure, and paranoid schizophrenia. He also made the conditions known to the medical professionals at time he entered HRYCI. Defendant Williams does not provide the medical care to the inmates. He has no direct knowledge of Plaintiff's condition and therefore cannot be deliberately indifferent to Plaintiff's needs.

### B. PLAINTIFF CANNOT HOLD DEFENDANT, A NON-MEDICAL PRISON OFFICIAL, RESPONSIBLE WHEN PLAINITFF WAS UNDER THE CARE OF THE PRISON PHYSICIANS.

Plaintiff's complaint names the incorrect defendant regarding his medical claims. Medical care at HRYCI is provided by First Correctional Medical ("FCM"), a company that has a contract with the State of Delaware to provide medical care to inmates. Non-medical prison officials are justified in believing that inmates are receiving the medical supervision they require when the inmates are under the care of a physician. *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004). In *Spruill*, the Court recognized that the different groups are responsible for handling the variety of needs in a prison, including medical care. *Id.* The Court held that due to the division of labor in prisons, non-medical prison officials cannot be liable when the care is being provided by physicians and other health care providers. *Id.* Defendant Williams, as a non-medical prison official is not responsible for the particular treatment plan for Plaintiff. That responsibility belongs to FCM. Plaintiff fails to name FCM as a defendant. Therefore, Plaintiff has instituted an action against Defendant Williams, who has no liability for his medical care.

### C. PLAINTIFF'S CLAIM THAT HE DID NOT RECEIVE MEDICATION IS WITHOUT MERIT.

A review of the exhibits included with this memorandum will show that Plaintiff did receive evaluation, treatment and medication. Plaintiff started taking psychotropic medications within twenty four hours of his entry to HRYCI. He also received testing for his blood glucose

level, medication to control his diabetes, and a nutritional assessment while in HRYCI. Prison medical providers had wide discretion in the diagnosis and treatment of inmates. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3rd Cir. 1979). In *Pierce,* the Court held that courts will not second-guess the decisions of medical providers regarding treatment   Although Plaintiff claims that he did not receive medication, implying that he did not receive adequate treatment, just the opposite is true. Plaintiff received specific evaluation of his diabetes and psychiatric status, as the records clearly indicate.

### D. SLEEPING ON THE FLOOR FOR A TEMPRORARY PERIOD IS NOT UNCONSTITUTIONAL.

First, Plaintiff claims he was housed with two other inmates and had to sleep on the floor of a cell. Prison records show that Plaintiff was indeed housed in a cell with two other inmates, and had to sleep on the floor for the first five days of his incarceration.

Overcrowding in cells, in this instance three inmates housed in a cell meant for two prisoners, is not considered cruel and unusual punishment. *Rhodes v. Chapman,* 452 U.S. 337 (S. Ct. 1981). In *Rhodes*, the inmates claimed that two prisoners housed in cells made to hold one person is cruel and unusual punishment   The Supreme Court held that double celling is not cruel and unusual punishment, and does not inflict unnecessary or wanton pain. *Rhodes* at 348. The Court went on to say that "[T]he Constitution does not mandate comfortable prisons[.]" *Id.* In addition, the District Court for the District of Delaware has repeatedly rejected the claim that having to sleep on the floor is unconstitutional. *See Renn v. Taylor*, 2001 WL 657591 (D.Del. March 2, 2001) (finding that sleeping on the floor does not violate the Eighth Amendment); *Jackson v. Brewington-Carr*, 1999 WL 27124 (D. Del. January 15, 1999) (stating that if sleeping on the floor is a temporary condition, then the temporary condition is not

13

unconstitutional); *Bartley v. Taylor*, Civ. A No. 98-503, McKelvie, J. (D. Del. December 19, 1999); *Bagwell v. Brewington-Carr*, 2000 WL 1728148 (D. Del. April 27, 2000) (finding that although there was overcrowding, the inmate did not suffer deprivation of any basic human need as he admitted that he received food and a place to sleep); *Torres v. Brewington-Carr*, Civ. A. No. 98-159, Longobardi, J. (D. Del. November 29, 1999) ( finding that having to sleep on the floor, and receiving limited exercise, along with meals served below the required temperature was not enough to state a claim under Section 1983).

That Plaintiff was housed on the floor of the cell for five nights does not rise to the level of cruel and unusual punishment. He was ultimately assigned to a bunk in a cell.

## CONCLUSION

For the foregoing reasons, Defendant Williams respectfully requests that this Honorable Court enter an order dismissing Plaintiff's claims against him with prejudice.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Lisa Barchi
Lisa Barchi  #3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
lisa.barchi@state.de.us

Attorney for Defendant Raphael Williams

DATE: June 29, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2005, I electronically filed *Defendant's Memorandum of Points and Authorities in Support of His Motion to Dismiss/Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on June 29, 2005, I have mailed by United States Postal Service, the document to the following non-registered participant: Ernest L. Brookins.

/s/ Lisa Barchi
Lisa Barchi  # 3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
lisa.barchi@state.de.us