IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNEST BROOKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-1250-SLR |
| | ) |
| RAPHAEL WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

Ernest Brookins, Howard R. Young Correctional Institution, Wilmington, Delaware. Pro se.

Lisa Barchi, Esquire, of the Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Raphael Williams.

**MEMORANDUM OPINION**

Dated: November 30, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff Ernest Brookins, a former inmate of the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, files this 42 U.S.C. § 1983 ("§ 1983") action alleging a violation of his Eighth Amendment rights. Defendant Raphael Williams is the Warden of HYRCI. Currently before the court is defendant's motion for summary judgment. (D.I. 11) The court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

Plaintiff's claims arise from his initial period of incarceration extending from July 7, 2004 through July 12, 2004. (D.I. 2) While plaintiff was first being processed by booking on July 7, 2004, he claims that he was given "used clothing, underwear, T-shirts, socks, pants, shirts, blankets, pillow case (without pillows), and sheets." (D.I. 2) Plaintiff states that when he refused to wear the used garments, an officer[1] told him he would "call a code" on him. (D.I. 2) Plaintiff also claims that despite having mental illnesses, diabetes, and high blood pressure, he was not given proper medical care, including medication.[2] (D.I. 2)

---

[1] Plaintiff's claim only identifies one of the officers and medical staff whom he claims mistreated him.

[2] Defendant's memorandum in support of his motion to dismiss counters plaintiff's claim. Medical records are cited which contradict plaintiff's claims of nonfeasance regarding his mental conditions (D.I. 12 at ex. G, H) and his diabetes (D.I. 12 at ex.

After his transfer from booking on July 8, 2004, plaintiff avers that he was placed in a cell with two other inmates and forced to sleep on the floor, without a mattress, next to a toilet.[3]  (D.I. 2)  Plaintiff further claims that he was forced to eat next to the toilet.[4]  (D.I. 2)  Additionally, plaintiff claims that during those five days in that cell, he was not allowed to exercise properly and there was a lack of hot water.  (D.I. 17)  It was these conditions that plaintiff claims led to his feelings of stress, anxiety and humiliation.  (D.I. 2)  Defendant Raphael Williams is the Warden of HRYCI.  Plaintiff contends it was defendant's responsibility to protect plaintiff from these conditions.  (D.I. 2)

### III. STANDARD OF REVIEW

Because the parties have referred to matters outside the pleadings, defendant's motion to dismiss shall be treated as a motion for summary judgment.  See Fed. R. Civ. P. 12(b)(6).  A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

E).

[3]Plaintiff's claim fails to mention that he was moved to a cell which had a bunk, where he did not have to sleep on the floor, five days later. (D.I. 12 at ex. A)

[4]Defendant's motion denies this claim. Defendant claims that prisoners are generally not supposed to be eating in their cells. (D.I. 12)

2

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of his

case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IV. DISCUSSION

A. Respondeat Superior Liability

Defendant Raphael Williams argues that he is being sued in his capacity as Warden of the HYRCI and is not liable through the doctrine of respondeat superior. The Third Circuit has held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Personal involvement can be established through allegations of either personal direction or actual knowledge and acquiescence; however, such allegations must be made with particularity. See Rode, 845 F.2d at 1207.

Viewing the facts in a light most favorable to the plaintiff, the court finds that plaintiff has not shown any evidence that defendant had either personal knowledge of, or in any way acquiesced to, plaintiff's situation. (D.I. 2) Here, much like in Rode, plaintiff has failed to allege anything but the mere supervisory function of defendant, which is not enough to make a claim under respondeat superior. All plaintiff has

4

shown is that he filed grievances. (D.I. 2) Grievances are not enough to impute knowledge to the defendant.[5] Rode, 845 F.2d at 1208. In sum, plaintiff has not alleged claims against defendant with particularity. (D.I. 2) He failed to make an allegation that defendant was involved in any aspect of his alleged mistreatment. (D.I. 2, 12) Therefore, summary judgment shall be granted in favor of defendant.

### B. Plaintiff's Conditions of Confinement Claim

Even if plaintiff's claims were not denied under respondeat superior, his claims would fail as a Fourteenth Amendment argument. Although plaintiff brought this suit under the Eighth Amendment, he was a pretrial detainee as opposed to an inmate who was in the custody of the State. Therefore, this suit is properly brought under the Fourteenth Amendment Due Process Clause and not under the Eighth Amendment's protection against cruel and unusual punishment. See Hubbard v. Taylor, 339 F.3d 150 (3d Cir. 2005).

To assess whether the constitutional rights of a pretrial detainee have been violated, it must be determined whether the "disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental

---

[5] In Rode, the court stated that if the filing of a grievance were enough to put a defendant on notice for personal liability, it would allow for personal liability in almost every case. Rode, 845 F.2d at 1208

5

purpose." Bell v. Wolfish, 441 U.S. 520, 539 (1979); see also Hubbard, 399 F.3d at 165. "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Bell, 441 U.S. at 538. "In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard, 399 F.3d at 159-160 (citing Bell, 441 U.S. at 542) (internal quotation marks omitted).

Plaintiff was not punished by being forced to sleep on the floor of his cell. Although this lodging was less than comfortable, it served a legitimate governmental purpose. Overcrowding has become a fact of life in prisons and the need of inmates to be housed somewhere underlies this legitimate governmental purpose.[6] Indeed, the conditions at issue lasted only for a period of five days until another accommodation was available for plaintiff. (D.I. 12) Additionally, the Third Circuit in Hubbard indicated that it is peculiarly within the

---

[6] Hubbard discusses the case of Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983), where the court concluded that prison overcrowding was rationally connected to the objective of detaining inmates who could not make bail.

6

province of correctional officials, based on their expertise, to determine whether conditions are related to a legitimate government interest. The court should give deference to the correctional officials' opinions unless it is shown that they have blatantly exaggerated. Hubbard, 399 F.3d at 159. In this case, prison officials have decided that, although uncomfortable, placing a pretrial detainee such as the plaintiff on the floor is the best way to deal with overcrowded prisons.

The court must next ask if the conditions imposed on plaintiff amounted to punishment. The situation at bar is factually akin to that which occurred in Hubbard. In Hubbard, pretrial detainees were confined three to a two-person cell. However, what is significantly different from plaintiff's situation is that the pretrial detainees in Hubbard were confined for at least two months in those conditions and, in most cases, the confinement was between three to seven months. Hubbard, 399 F.3d at 155. The Hubbard court, in analyzing Bell, noted that the Supreme Court did not "elaborate upon the duration of confinement that could constitute an extended period of time, nor did it elaborate upon the kind of privations and hardship that could constitute punishment in violation of the Due Process Clause." Hubbard, 399 F.3d at 159 (citing Bell, 441 U.S. at 542). In Bell, because of overcrowding, the prison housed two pretrial detainees in a cell designed for one over a period of

less than sixty days. The court ruled that this did not amount to a violation of Due Process rights. Bell, 441 U.S. at 542. Based on the analysis in Bell, it appears that the conditions those detainees endured did not amount to punishment outside the purview of the Fourteenth Amendment. In the case at hand, plaintiff's confinement period was only five days. (D.I. 12) This time period is substantially less than the periods of confinement in both Bell and Hubbard. Based on these facts, plaintiff's brief period of confinement cannot be considered punishment.

Plaintiff's complaints of being forced to eat in close proximity to the toilet are also without constitutional dimension, when plaintiff brought food back to his cell in violation of the rules and chose to eat there.[7]

### C. Plaintiff's Claim of Improper Medical Care

Pretrial detainees are to be given appropriate medical care under the Due Process Clause. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987) (citing City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983). The standard of medical care required under the Due Process Clause cannot fall below the minimum level required by the Eighth Amendment. See

---

[7]In defendant's memorandum supporting summary judgment, it is stated that the prison considers food in a cell to be contraband for a prisoner with diabetes, a condition from which plaintiff has constantly pointed out he suffers. (D.I. 12 at ex. I)

8

Boring, 833 F.2d at 471 (citing Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985)). At a minimum, prison officials cannot allow "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." See Boring, 833 F.2d at 471; see also Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003); Estelle v. Gamble, 429 U.S. 97, 106 (1976). To show deliberate indifference, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer v. Brennan, 511 U.S. 825, 838 (1994). Moreover an informed medical decision, even if it goes awry, does not represent cruel and unusual punishment. Estelle, 429 U.S. at 107. Deliberate indifference is something more than simple negligence. Farmer, 511 U.S. at 837-838.

Medical records from the prison indicate that plaintiff was given all of his medication within a day of being booked (except for the medication which he was unable to name for prison medical staff). For those unnamed medications, he was given tests to determine what he would need to treat his detected conditions and was then given appropriate medication. (D.I. 12 at ex. B, C, D) This evidence is in direct contradiction to what the plaintiff stated in his complaint, where he claimed that he was not given any of his medications initially. (D.I. 2) The record belies what plaintiff has claimed and indicates that he was treated to

9

the best of the prison's ability at the time of his admittance. The doctor prescribed proper medication to the plaintiff and ordered tests for conditions he could not immediately diagnose or treat. (D.I. 12 at ex. B, C, D)

Additionally, defendant has not been shown to have been deliberately indifferent. Even if defendant had cursory knowledge about plaintiff's condition,[8] defendant cannot be accused of having ignored the risk of serious harm to plaintiff. Plaintiff was given reasonable treatment that was available in the prison infirmary; he was not ignored, as he claims. (D.I. 2, 12)

Based on the above reasoning, summary judgment is granted in favor of defendant on plaintiff's Due Process claims, assuming plaintiff could properly bring a claim against defendant under respondeat superior.

## V.  CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment. An appropriate order shall issue.

---

[8] Plaintiff did file a grievance relating to this, however, merely filing a grievance was not enough to put defendant on notice that a possible serious harm had taken place. Rode, 845 F.2d at 1208.